IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

OLD REPUBLIC SURETY COMPANY                                  PLAINTIFF

V.                                                  NO: 1:21CV126-GHD-DAS

J. CUMBY CONSTRUCTION, INC. AND                              DEFENDANTS
WESTFIELD INSURANCE COMPANY

**MEMORANDUM OPINION**

Before the Court is Defendants J. Cumby Construction, Inc. ("JCC") and Westfield Insurance Company's ("Westfield") Motion to Stay and Compel Mediation and Arbitration. [8]. Plaintiff Old Republic Surety Company ("Old Republic") has responded in opposition to this motion. Upon due consideration, for the reasons set forth herein, the Court hereby grants the Defendants' motion.

**Factual Background**

JCC is the general contractor on an installation project known as Tupelo Raw Water Supply Facilities Contract A – Intake and Pumping Northeast Mississippi Regional Water Supply District Itawamba County, Mississippi ("The Project") located in Fulton, Mississippi. JCC initially entered into a subcontract with Huffman Contractors, LLC ("Huffman") in which Huffman was to, among other things, install underwater intake piping, pilings, and air burst lines. Huffman was later terminated by JCC and Huffman's surety, Old Republic, stepped in to bring in another contractor to complete the remaining work. JCC and Old Republic entered into a Takeover Agreement for Old Republic to "undertake the completion of the remaining work and the Principal's obligations under the Bonded Contract in accordance with and subject to the terms of the Performance Bond

1

and this agreement [and] in doing so surety will receive payment of the total amount that is due...." [8-4].

Disputes arose between JCC and Old Republic regarding the quality of Old Republic's completion contractor and JCC alleges that the completion contractor's work did not comply with the quality of the subcontract. JCC states that another contractor was retained to complete the remaining work and that several aspects of Old Republic's completion contractor's work was defective and required significant costs to correct. Old Republic has now brought multiple claims against defendants, alleging that JCC and Westfield have refused to pay the remaining $970,665.39 balance owed for work on the project. In response to the complaint, defendants have alleged that this current action before the Court is improper as the relevant agreements and contracts contain an arbitration clause.

## Discussion

The Court generally assesses whether the parties agreed to arbitrate the dispute in question using a two–step process: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *See Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016). If the Court finds that the parties have a valid agreement to arbitrate and that the dispute is within the scope of the arbitration agreement, the Court generally examines whether any legal constraints foreclose arbitration of those claims. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S. Ct. 3346)). Courts must "apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but . . . do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). *See Volt Info.*

*Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). The determination of whether a party is bound by an arbitration agreement is included within the broader issue of whether the parties agreed to arbitrate. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95 (2d Cir. 1999)). "The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts—no more and no less." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing 9 U.S.C. § 2); *see Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) ("[a]rbitration is a matter of contract between the parties").

It is undisputed that plaintiff Old Republic is a nonsignatory to the Subcontract. "Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003) (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002)). Where a nonsignatory to the agreement to arbitrate is involved, the Court must find that the nonsignatory meets one or more of six theories in order to bind the nonsignatory to arbitrate a dispute: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) estoppel, or (6) third-party beneficiary. *Hellenic Investment Fund v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). Defendants assert only incorporation by reference and as such the Court does not consider the remaining theories.

Defendants assert that the entirety of the Subcontract, including the arbitration clause, was incorporated by reference into the performance bond. Specifically, Defendants argue that the

3

following language in the performance bond requires incorporation by reference of all clauses of the Subcontract:

> WHEREAS, Principal has by written agreement dated 8/28/2018 entered into a subcontract with Obligee for Project #18123: Tupelo – Raw Water Intake, Subcontract #18123-016, Tupelo, MS which subcontract is by reference made a part hereof, and is referred to as subcontract.

[8-3].

Defendants assert that the performance bond language illustrates Old Republic's intent to complete the subcontract in place of Huffman and to be bound by all the terms and conditions to the subcontract. Further, Defendants state that the takeover agreement between Old Republic and JCC demonstrates further evidence of the parties' intent to be bound by the subcontract, as the agreement provides in pertinent part that "Surety (Old Republic) is willing to undertake the completion of the Remaining Work and the Principal's (Huffman's) obligations under the Bonded Contract in accordance with and subject to the terms of the Performance Bond and this Agreement." [8-3]. Also, Defendants assert that the following language in the takeover agreement provides more language showing arbitration as a requirement:

> This Agreement shall be governed by the laws of the State of Tennessee. The Parties agree that the jurisdiction, forum, and venue for all actions arising out of this Agreement shall be the same as for any claim the General Contractor (JCC) can assert or could have asserted under the performance Bond...

[8-4].

Defendants argue that since the performance bond specifically mentions and incorporates by reference the entirety of the subcontract, then the subcontract provides language detailing what the jurisdiction, forum, and venue should be:

> Any and all claims and disputes relating to this Subcontract shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

4

> Any such claim or dispute not settled by negotiation or mediation may, at the sole and exclusive discretion of the Contractor, be subject to litigation or arbitration…Should Contractor elect to submit a dispute or claim to arbitration, all pending legal/equitable proceedings shall be stayed pending the outcome of arbitration.

[8-2].

"No particular language is required to incorporate a document by reference; all that is necessary is that the parties' intent is plainly expressed." *Nat'l Presort Servs., Inc. v. ACS State & Local Solutions, Inc.*, 176 Fed.Appx. 543, 548 (5th Cir. 2006) (per curiam) (unpublished). Generally, the "separate document will become part of the contract where the contract makes 'clear reference to the document and descries it in such terms that its identity may be ascertained beyond a doubt." *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 267 (5th Cir. 2011) (citing 11 Williston on Contracts § 30:25)).

"[I]n a contract 'evidencing a transaction involving commerce,' such as the subcontract in this case, arbitration provisions are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *JS & H Const. Co. v. Richmond County Hospital Authority*, 473 F.2d 212, 214 (5th Cir. 1973) (quoting 9 U.S.C.A. § 2). Also, "as a matter of contract law, incorporation by reference is typically effective to accomplish its intended purpose where, as here, the provision to which reference is made has a reasonably clear and ascertainable meaning." *JS & H*, 473 F.2d at 215.

The performance bond and takeover agreement clearly and plainly incorporate by reference the subcontract. The language makes clear that the parties' intent was to be bound by the terms of not only those agreements, but the existing subcontract as well. Again, the performance bond references the complete subcontract name with specificity by referring to it as Project #18123: Tupelo – Raw Water Intake, Subcontract #181230016, Tupelo, MS, which is the correct

5

subcontract that includes a mediation/arbitration clause. Further, the performance bond states that the "subcontract is by reference made a part hereof, and is referred to as subcontract." [8-3]. The Court finds that the performance bond clearly makes reference to the subcontract and describes it with sufficient specificity that Old Republic could ascertain the identity of the document and its terms beyond a doubt. Between federal policy favoring arbitration where clauses exist and the plain language binding the parties to the terms of the subcontract, the arbitration clause at issue was a valid and enforceable part of the contract incorporated by reference.

Following this finding, the Court refers back to the two inquiries when assessing whether the parties agreed to arbitrate the dispute in question with the first being "whether there is a valid agreement to arbitrate between the parties." *Gross*, 817 F.3d at 176. Old Republic does not seem to dispute the validity of the arbitration clause itself, but rather only that the clause did not apply to them as they never agreed to arbitrate with anything they signed. As discussed, a nonsignatory can be bound by other contracts when they are incorporated by reference as done so here. The Court finds that there exists a valid agreement to arbitrate between JCC and Old Republic.

The Court now arrives at the second inquiry of whether the dispute in question falls within the scope of that arbitration agreement. Courts must "apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope[.]" *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). As stated previously, the arbitration clause mandates that "[a]ny and all claims and disputes relating to this Subcontract shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." The Contractor retains the ability to submit a dispute or claim to arbitration, which is the current stage in this proceeding.

6

The Fifth Circuit distinguishes between "broad" and "narrow" arbitration clauses. *Baudoin v. Mid–Louisiana Anesthesia Consultants, Inc.*, 306 F. App'x 188, 192 (5th Cir. 2009) (citing *Complaint of Hornbeck Offshore* (1984) *Corp.*, 981 F.2d 752, 754–755 (5th Cir. 1993)). Where the clause is broad, "the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Hornbeck*, 981 F.3d at 754 (citing *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985)). But if the clause is narrow, the court should determine whether the dispute falls within the clause before it refers the matter of arbitration. Id. Where the scope of the clause is "fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Mar–Len of La., Inc. v. Parsons–Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985).

"'Narrow' arbitration clauses only require arbitration of disputes 'arising out of' the contract," while "'broad' arbitration clauses govern[] disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). Thus, a broad arbitration clause is not "limited to claims that literally 'arise under the contract' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." Id.

The arbitration clause in question requires mediation and arbitration of "any and all disputes relating to this subcontract...." [8-2]. The arbitration clause is limited to claims and disputes that related to the subcontract, which makes the arbitration clause a narrow one. The dispute in this case concerns the completion, quality, and payment for the subcontract agreement where The Project was set to be completed. The subcontract provided for the details for the work to be done along with the specifics such as deadlines, quality of work, and payment, all of which are issues at the heart of this case. Considering the strong federal policy in favor of arbitration,

7

the Court concludes that this dispute is related to the subcontract and is therefore arbitrable under its arbitration provision.

Lastly, the Defendants argue that the claims against Westfield should also be stayed pending the outcome of arbitration between Old Republic and JCC. Westfield argues that their potential liability necessarily first requires resolution of JCC's liability from the alleged breach. Westfield states that allowing Old Republic's claim against Westfield to proceed at this stage would expose the parties to a risk of inconsistent results.

A district court has broad discretion to stay cases pending before it, and "[i]n some cases … it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20, 103 S.Ct 927, 74 L.Ed.2d 765 (1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). Allowing litigation to proceed simultaneously with the mediation and possibly arbitration would create risk of inconsistent results and duplicative litigation. In the best interests of judicial economy, the Court exercises its broad discretion to stay the proceedings against Westfield pending the result of the dispute between Old Republic and JCC.

## Conclusion

For the reasons stated above, Defendants' Motion to Stay and Compel Mediation and Arbitration [8] is GRANTED. Plaintiff Old Republic's claims against JCC should be submitted to mediation and then arbitration if required. Further, this matter is STAYED pending the mediation and arbitration, as necessary, of Plaintiff Old Republic's claims against JCC.

The parties are directed to inform the Court within fourteen (14) days of the completion of the mediation/arbitration proceeding.

An order in accordance with this opinion shall issue this day.

This, the 16th day of August, 2022.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE